UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                      CASE NO. 6:16-cr-3-JA-GJK

HAMID MOHAMED AHMED ALI
REHAIF

## UNITED STATES' RESPONSE IN OPPOSITION TO REHAIF'S MOTION TO DISMISS

    The United States opposes Hamid Mohamed Ahmed Ali Rehaif's Motion to Dismiss because neither his statutory nor constitutional speedy trial rights have been violated. As to his statutory speedy trial rights, Rehaif is absent or unavailable under the criteria set out in the Speedy Trial Act because he cannot be specifically located and returned to the United States through due diligence. Nor does his deportation following his service of his sentence but before the vacatur of his conviction change the outcome under the Act, which specifically excludes periods of absence or unavailability following an order for a retrial.

    As to Rehaif's constitutional speedy trial rights, the United States has no extradition treaty with the United Arab Emirates (UAE); thus, the fact that the government has been unable to force Rehaif to return to stand trial does not weigh heavily against it. Further, because Rehaif's invocation of his speedy trial rights was merely pro forma, that factor also does not weigh heavily against the United States. And Rehaif does not establish that he has suffered any actual prejudice, meaning that

his constitutional speedy trial rights have not been violated under the *Barker v. Wingo* factors. Thus, this Court should deny Rehaif's motion to dismiss.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The factual background of this case has been adequately addressed in the pre-sentence investigation report (PSR), the sentencing memorandum filed by the United States, the original sentencing, the original Eleventh Circuit decision affirming the conviction, and the United States Supreme Court decision.  *See* Docs. 79, 83, 103, 123, and *United States v. Rehaif*, 139 S.Ct. 2191 (2019).

However, the facts below are intended to highlight some of these facts based on the Court's characterization of this case and the Court's reference to Rehaif's dangerousness at the most recent status hearing.  Specifically, the Court stated the following: "it turned out that he [Rehaif] was just a bad student who had a girlfriend here and didn't want to go home, and he liked shooting firearms."  Doc. 151 at 5-6. Later, the Court stated, "you know, he's not a threat to anybody as best I can tell. You may know different.  I don't know."  *Id*. at 6.  As a result of the Court's statements and in response, the United States offers the following facts:

At the sentencing hearing, the United States provided testimony from FBI Special Agent (SA) Tom Slone.  *See generally*, Doc. 103 at 14-24.  Special Agent Slone provided information from a prior interview with Rehaif where Rehaif admitted that he previously received weapons training while a cadet in the UAE. *Id*. at 17.  Special Agent Slone also detailed other firearms that Rehaif possessed and shot, including an assault rifle, which SA Slone believed was an AK-47.  *Id*. at 16.

Special Agent Slone also provided testimony from other interviews where Rehaif claimed that he had a private investigation business and hired two or three people to "follow people for him." Doc. 103 at 19. At no time did Rehaif have a private investigation business. In addition, SA Slone discussed that at least two people saw Rehaif with firearms outside of the shooting range.

Special Agent Slone went on to explain that Rehaif had hired a private investigator to follow his girlfriend because he thought she was "cheating on him." *Id*. at 20. Special Agent Slone interviewed the private investigator that Rehaif hired. The private investigator provided Rehaif with pictures, license plate numbers, etc. The private investigator told SA Slone that she was concerned because Rehaif's text messages showed that he was threatening to "break bones" of another individual, who turned out to be his girlfriend's mother's boyfriend, and to harm himself. Doc. 103 at 24-25. In addition, Rehaif threatened to kill "Katie Atwood" on at least two occasions. *Id*. Finally, SA Slone described Rehaif buying two other firearms "off the books" from an individual named River Clemow. *Id*. at 25.

Each of these acts establish why the United States viewed, and continues to view, Rehaif as a threat. Not only was he in the United States illegally, but he was also buying and shooting various firearms and threatening United States citizens.

## II.   Procedural Background

A jury convicted Rehaif of possessing firearms and ammunition while being an alien unlawfully in the United States, in violation of 18 U.S.C. § 922(g). Docs. 71 and 72. The Eleventh Circuit affirmed the conviction, holding that the United

States was not required to prove that the Rehaif knew he was in the United States illegally and unlawfully. Doc. 123. The United States Supreme Court reversed the Eleventh Circuit and held that the United States is required to prove that a defendant is aware of his status, specifically, that he is a person barred from possessing a firearm and ammunition. *Rehaif v. United States*, 139 S.Ct. 2191, 2195.

As a result, the Eleventh Circuit remanded the case to this Court to determine whether "the district court's error in failing to instruct the jury that the government must prove that Rehaif knew he was illegally or unlawfully in the United States was harmless such that the conviction can be affirmed." Doc. 126 at 4. On remand this Court vacated Rehaif's convictions and held that it was not harmless error to fail to give the jury instruction required by the United State Supreme Court's ruling. Doc. 143.

Following the original trial, Rehaif was sentenced to a term of imprisonment, served his term of imprisonment, and was deported back to his native country, the United Arab Emirates, following his release from the Bureau of Prisons.

### III. Evidence Admitted at Trial

Rehaif entered the United States on August 19, 2013, on an F-1 student visa. Doc. 108 at 215. That visa was valid for the duration of his status, i.e., so long as he remained enrolled in an approved academic institution. *Id.* Rehaif enrolled at the Florida Institute of Technology (FIT) for the fall 2013 semester and arrived around August 20, 2013. *Id.* at 189.

Here, the United States' first witness, Jackie Linger, addressed the Rehaif's knowledge that he was illegally and unlawfully in the United States when he possessed the firearm. Ms. Linger was the Associate Director of International Student and School Services for FIT, which the defendant attended. Doc. 108 at 185-186. Ms. Linger explained that she was also a "designated school official" which allowed her to sign various immigration documentation and made her responsible for making sure students were aware of their immigration status and were in compliance with the immigration rules, including attending class as required. *Id*. at 186. Specifically, Ms. Linger testified that she provided the defendant with a "welcome packet" via email that notified the defendant of his responsibilities as an International Student at FIT. *Id*. at 188, 205, 206, and Gov't Exs. 1-A (Doc. 73-1) and 1-B (Doc. 73-2).

Ms. Linger testified that she later terminated Rehaif as a student at FIT for "failure to maintain status" based on his academic dismissal from FIT. Doc. 108 at 191-192, 221-222. Rehaif was academically dismissed because he failed to maintain a qualifying grade point average (GPA) and pass the required number of credits. *Id*. at 220-21 and Gov't Ex. 5. Specifically Rehaif's GPA was 0.06 for three total semesters. *Id*.

After the fall 2014 semester he was officially terminated from FIT in February 2015, Ms. Linger testified that she notified both Rehaif and his sponsor of the termination. *Id*. The email to Rehaif informed him that "your immigration status will be terminated on February 5, 2015." Gov't Ex. 4-A (Doc. 73-7). That email was

sent to both email addresses on file for Rehaif. Gov't Exs. 4-A (Doc. 73-7) and 4-B (Doc. 73-8).

The email informed Rehaif that he could attempt to transfer to another school to avoid termination of his immigration benefits. *Id.* The email reminded him, though, that if he had not transferred by February 5, 2015, his immigration status would be terminated. *Id.* According to Ms. Linger's records, Rehaif never informed FIT of any school transfer, nor did he appeal his dismissal from FIT following the fall 2014 semester. *Id.* at 221, 226.

Ms. Linger explained that Rehaif was previously notified following the spring 2014 semester that he would be academically dismissed from FIT. *Id.* at 225. However, Rehaif appealed that academic dismissal as instructed and was "conditionally readmitted." *Id.* at 225-226. Despite his awareness of the appeals process to regain admission, Rehaif did not attempt to appeal his academic dismissal following the fall 2014 semester.

Rehaif also admitted knowledge of his status during an interview with law enforcement. FBI Special Agent (SA) Tom Slone testified that Rehaif admitted that he entered the United States in order to attend FIT but that he was academically dismissed after the fall 2014 semester. Doc. 109 at 99. He also admitted that he was aware he was "out of status" for immigration because he was not in school. *Id.* at 101.

Rehaif also showed knowledge of the importance of his enrollment in school to his immigration status. Rehaif told SA Slone that he had applied to a Keiser

University but later admitted that he had not actually applied to Keiser and was not attending school anywhere. *Id*. at 99. This false statement about an application to another school demonstrated that Rehaif was aware of the requirement that he be enrolled in school to keep his F-1 student visa valid. Because he was not enrolled in any school, Rehaif also knew by implication he had no legal status, even apart from his direct admission to the agent that he knew he was "out of status."

Thus, Rehaif's legal status in the United States ended on February 5, 2015, and he was aware of this fact because it was communicated to him by FIT officials. Therefore, when he possessed a firearm and ammunition in December 2015, he knew that he was not legally in the United States.

Moreover, the evidence of Rehaif's possession of the firearms was captured on the shooting range's surveillance videos and were introduced at trial. Gov't. Exs. 11 and 12.

Based on the evidence admitted at trial, the United States is able to secure the necessary witnesses and evidence if this case were to go to trial again.

In fact, Rehaif completed his sentence at the Bureau of Prisons on March 30, 2017, and he was deported a short time later. The Eleventh Circuit affirmed his conviction on August 17, 2017. Doc. 123. The United States Supreme Court reversed and remanded defendant's conviction on June 21, 2019. *Rehaif v. United States*, 139 S.Ct. 2191 (2019). Therefore, Rehaif had been deported for approximately two years when the United States Supreme Court reversed and remanded his case.

## IV.     DEFENDANT'S PRESENT MOTION

Now Rehaif argues, through his attorneys, that the United States has violated his right to a speedy trial under 18 U.S.C. § 3161, as well as the Sixth Amendment. The general case law cited by defendant governs this case, i.e., *Barker v. Wingo*, 407 U.S. 514 (1932) and *Doggett v. United States*, 505 U.S. 647 (1992).

In short, Rehaif asks that this Court dismiss this indictment with prejudice because the United States deported him thereby creating his unavailability.

It bears noting that he was deported when his conviction was on direct appeal to the Eleventh Circuit, who later affirmed it, and that his convictions were not reversed and the case remanded until two years after he was deported. This is significant because defendant was deported to the United Arab Emirates by the United States when his convictions were still in force and effect.

Based on information provided to the undersigned by the Department of Justice, Office of International Affairs, the United Arab Emirates does not have a bilateral extradition treaty or a mutual assistance treaty with the United States and absolutely will not surrender one of its citizens to the United States for prosecution. Therefore, the undersigned has been advised that securing defendant for a re-trial is only possible if Rehaif travels outside of the UAE to a country with an extradition treaty or mutual assistance treaty with the United States.

## V.     ARGUMENT

### a. *Speedy Trial Act*

Under 18 U.S.C. § 3161(h)(3), Rehaif is absent or otherwise unavailable for

trial. His whereabouts are generally known, in that defense counsel has related that Rehaif is in the United Arab Emirates, *see* Doc. 151 at 4, although the United States does not know his specific location. Further, his presence for trial cannot presently be obtained by due diligence because the United States does not have an extradition treaty with the UAE. *See United States v. Diacolios*, 837 F.2d 79, 84 (2d Cir. 1988) ("Because the government's failure to obtain defendant's extradition was the result of reliance upon United States policy not to seek extradition outside the extradition treaty with Greece, we conclude that the government has satisfied its burden of demonstrating due diligence in seeking defendant's return for trial without unnecessary delay."); *see also United States v. Tchibassa*, 452 F.3d 918, 925 n. 6 (D.C. Cir. 2006) (same).[1]

     Rehaif argues that the exclusions from time due to his absence or unavailability do not apply under 18 U.S.C. § 3161(e), which governs the speedy trial requirement for retrials, because he was deported following the service of his sentence. Doc. 153 at 4. But he cites no case law that supports his position, and the clear language of the Speedy Trial Act applies regardless of his earlier deportation. That is, his exact whereabouts are unknown and cannot be discovered through due diligence given the country he is located in. *See* 18 U.S.C. § 3161(h)(3)(B). Even if his whereabouts could be discovered and known, his presence at trial could not be obtained by due diligence due to the lack of an extradition treaty. *Id.* Thus, the

---

[1] Although these cases consider a defendant's constitutional right to a speedy trial, their logic applies with equal force to determining due diligence in a statutory sense.

statutory requirements to exclude the time since the vacatur of his conviction are met.

Rehaif cites to cases in which a defendant was deported while on pretrial release to support his point, but those cases are inapposite. *See* Doc. 153 at 6 n.3. Rehaif was deported after serving his sentence but before his conviction was overturned at the Supreme Court. Had the United States sought to continue his presence in the United States through further incarceration until the conclusion of his appeal, Rehaif no doubt would have objected. This is not a case where the United States "essentially abandoned the prosecution by deporting" Rehaif, *see id.* (citing *United States v. Resendiz-Guevara*, 145 F.Supp.3d 1128, 1132 (M.D. Fla. 2015)); to the contrary, the United States tried and convicted Rehaif and litigated the case on appeal. This Court should deem Rehaif absent or unavailable and find that the statutory speedy-trial period is thus tolled.

### b. *Constitutional Right to Speedy Trial*

This Court employs a balancing test to determine whether a delay in a defendant's trial deprived him of his constitutional right to a speedy trial. *United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010) (citing *Barker v. Wingo*, 407 U.S. 514, 522, 530 (1972)). The balancing test requires the weighing of the following factors, commonly referred to as the *Barker* factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the actual prejudice borne by the defendant. *Villarreal*, 613 F.3d at 1350. To succeed on a speedy-trial claim, a defendant generally must show actual prejudice unless the

other three factors all weigh heavily against the United States. *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). Here, the *Barker* factors warrant a denial of Rehaif's motion to dismiss.

### i. The Length of the Delay

"Delays exceeding one year are generally found to be 'presumptively prejudicial.'" *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). Here, less than three years have passed since Rehaif's initial conviction was vacated. *See* Doc. 143. The United States acknowledges that this amount of time is sufficient to trigger the need to conduct a speedy-trial analysis. *See United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010). Although the delay here has created a presumption of prejudice, that is not enough to establish a speedy-trial violation. *See Doggett*, 505 U.S. at 655–56 (noting that presumptively prejudicial delay "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria"). And as explained below, the other factors here do not support Rehaif's motion.

### ii. The Reason for the Delay

The government bears the burden of explaining the reason for the delay. *See Ingram*, 446 F.3d at 1337. The Sixth Amendment mandates a "diligent, good-faith effort" on behalf of the government to find the defendant and bring him to trial. *United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) (quotation marks and citation omitted). Invalid reasons for delay include "[g]overnment actions which are

11

tangential, frivolous, dilatory, or taken in bad faith." *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997) (citation omitted). For example, the government may not deliberately delay a trial in order to weaken a defendant's case. *See Barker*, 407 U.S. at 531.

      Here, the primary, if not the sole, reason for delay is that Rehaif lives in the UAE, a country without an extradition treaty with the United States. *See* Doc. 151 at 4. The United States has no way to initiate the proceedings here without Rehaif's cooperation in returning.[2] *See United States v. Machado*, 886 F.3d 1070, 1081 n.10 (11th Cir. 2018) (holding that the government "was not required to seek extradition" when the country where the defendant was residing would not extradite him); *see also Bagga*, 782 F.2d at 1543 (holding that, because the United States's extradition treaty with India likely would not have allowed for Bagga's extradition, the United States was not negligent for failing to pursue extradition). Nor is the United States required to exhaust all conceivable avenues to bring Rehaif to trial. *Bagga*, 782 F.2d at 1543. There is no evidence that any actions the United States might have taken up until now would have secured Rehaif's presence for trial. Specifically, the United States has no information that that Rehaif has traveled outside of the UAE to a country that would extradite him to the United States, so that a "red notice" type of procedure would have resulted in his arrest.

---

[2] The United States plans to pursue all available legal remedies to obtain Rehaif's appearance in the United States for trial if the Court does not dismiss this Indictment. *See United States v. Stapleton*, 39 F.4th 1320, 1328 (11th Cir. 2022) (petition for cert. filed, Feb. 1, 2023).

Ultimately, the delay due to Rehaif's residence in UAE should not weigh heavily against the United States. *See generally Doggett*, 505 U.S. at 657–58 (excluding period of time that defendant was living freely abroad from delay attributable to United States). The United States has not intentionally delayed bringing Rehaif to trial in order to obtain a tactical advantage, which would have weighed heavily against the United States. *See Villarreal*, 613 F.3d at 1351. To the extent that the period of delay could have been shorter than it has been, that is due to, at most, mere negligence. Mere negligence is a more neutral reason for delay, which does not "tip the scale" in Rehaif's favor, particularly because he was "at liberty and outside the jurisdiction where the indictment was returned." *See Bagga*, 782 F.2d at 1541, 1544. Thus, the delay of Rehaif's retrial does not weigh heavily against the United States.

### iii. Rehaif's Assertion of his Right to a Speedy Trial

This Court should determine that Rehaif's assertion of his right to a speedy trial does not weigh heavily against the United States, because it is, at best, a pro forma assertion of his rights. *See Villarreal*, 613 F.3d at 1354 (citing *Barker*, 407 U.S. at 528-29) (explaining that a court may "attach a different weight" to different circumstances, such as frequent and forceful demands as compared to a "purely pro forma objection"). Rehaif first asserted his rights after remand about nine months ago when this Court held a status conference. *See* Doc. 151 at 9. Until filing this motion, he has done nothing to further assert those rights.

Further, the record supports a finding that Rehaif does not want to return to the United States to face trial; though he knows that the United States cannot

13

extradite him, he has taken no steps to discuss a voluntary return to allow his trial to proceed or work toward any kind of resolution. The Seventh Circuit has noted that, once a defendant who is abroad is aware that trial is pending, "it's his choice to face the judicial music in the United States;" if he choses not to return voluntarily, an appropriate inference is that he "wants to remain beyond the reach of our court system—otherwise he'd leave his place of refuge voluntarily and travel to the United States." *In re Kashamu*, 769 F.3d 490, 494 (7th Cir. 2014). While the Eleventh Circuit does not agree with the Seventh Circuit's position that the United States is not required to extradite the defendant when it can, the logic of *Kashamu* and the other circumstances discussed above demonstrate that Rehaif's invocation of his speedy trial rights after remand is pro forma only. Thus, this factor does not weigh heavily against the United States.

        **iv.  Actual Prejudice**

Because, as set forth above, the first three *Barker* factors do not all weigh heavily against the United States, Rehaif must show actual prejudice caused by the delay. *See Dunn*, 345 F.3d at 1296 ("'[I]n this circuit, a defendant generally must show actual prejudice unless the first three factors … all weigh heavily against the government.'") (quoting *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999)). Here, Rehaif contends that he has suffered actual prejudice due to the possibility that his defense will be impaired. Doc. 153 at 12. But he does nothing to explain how that defense would be impaired beyond a vague assertion that memories may fade and

that he cannot easily meet with his lawyers.³ *Id.* These allegations of impairment are too conclusory to meet Rehaif's burden of establishing actual prejudice. *See United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996) (stating that "mere conclusory allegations of impairment are insufficient to constitute proof of actual prejudice"); *Villarreal*, 613 F.3d at 1356-57 (rejecting defendant's contention of actual prejudice because he could identify only "weak" evidence that would have tended to exonerate him).

      Rehaif has not shown that the first three *Barker* factors weigh heavily in his favor and has not shown that he has been actually prejudiced by delay. Thus, Rehaif's constitutional right to a speedy trial has not been violated; for the same reason, this Court should not dismiss the indictment under Fed. R. Crim. P. 48.

---

³ Rehaif does not explain why he cannot easily meet and confer with his lawyers using electronic means, such as Zoom, which are readily available nowadays.

## VI.   CONCLUSION

For all of the reasons set forth herein, this Court should deny Rehaif's motion and leave this case on the administrative docket.

                Respectfully submitted,

                ROGER B. HANDBERG
                United States Attorney


By:  *s/ Shawn P. Napier*
      Shawn P. Napier
      Assistant United States Attorney
      USA No. 132
      400 W. Washington Street, Suite 3100
      Orlando, Florida 32801
      Telephone:  (407) 648-7500
      Facsimile:   (407) 648-7643
      E-mail:      shawn.napier@usdoj.gov

**U.S. v. HAMID MOHAMED AHMED ALI REHAIF   CASE NO. 6:16-cr-3-Orl-28GJK**

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Conrad Kahn, Esquire

*s/ Shawn P. Napier*
Shawn P. Napier
Assistant United States Attorney
USA No. 132
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:        shawn.napier@usdoj.gov